**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE:  TESTOSTERONE REPLACEMENT | ) | |
| THERAPY PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | Case No. 1:14-cv-1748 |
| | ) | MDL No. 2545 |
| This Document Relates To: | ) | |
| | ) | |
| *Owens v. Auxilium Pharmaceuticals, Inc..* | ) | |
| Case No. 1:14-cv-5180 | ) | |

**DEFENDANT'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT ON STATE LAW GROUNDS**

Andrew K. Solow (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10019-9710
Phone:  (212) 836-7740
Fax:  (212) 836-6776
Email:  andrew.solow@apks.com

Pamela J. Yates (*pro hac vice*)
**ARNOLD & PORTER KAYE SCHOLER LLP**
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Phone:  (213) 243-4178
Fax:  (213) 243-4199
Email:  pamela.yates@apks.com

***Attorneys for Auxilium Pharmaceuticals, LLC***
***(f/k/a Auxilium Pharmaceuticals, Inc.)***

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF UNDISPUTED FACTS .............................................................................. 3

     A.    Mr. Owens's Hypogonadism Diagnosis ................................................................. 3

     B.    Mr. Owens's Testim Use ......................................................................................... 4

     C.    Mr. Owens's Second DVT ...................................................................................... 5

STANDARD OF REVIEW ........................................................................................................ 7

ARGUMENT .............................................................................................................................. 7

I.     PLAINTIFFS CANNOT SATISFY THEIR BURDEN TO PROVE LEGAL
     CAUSATION, WHICH IS AN ESSENTIAL ELEMENT OF EACH OF THEIR
     CLAIMS ............................................................................................................................ 7

     A.    Plaintiffs Cannot Satisfy Their Burden to Prove Warnings Causation ................... 8

             1.    Plaintiffs Cannot Satisfy Their Burden to Show That Auxilium
                  Failed to Adequately Warn Dr. Smith That Testim Use Carried a
                  Risk of Blood Clots in the Legs ................................................................. 9
             2.    Plaintiffs Cannot Satisfy Their Burden to Show That Dr. Smith
                  Would Have Changed His Prescribing Decision If He Had Been
                  Provided a Different Warning ................................................................... 10

     B.    Plaintiffs Cannot Satisfy Their Burden to Establish That Testim Caused
          Mr. Owens's Second DVT .................................................................................... 12

II.    THE COURT SHOULD GRANT SUMMARY JUDGMENT ON EACH OF
     PLAINTIFFS' CLAIMS FOR ADDITIONAL REASONS ........................................... 13

     A.    The Court Should Grant Summary Judgment on Plaintiffs' Breach of
          Warranty Claims Because Plaintiffs Lack Privity with Auxilium ........................ 13

     B.    The Court Should Grant Summary Judgment on Plaintiffs' Fraud and
          Negligent Misrepresentation Claims Because Plaintiffs Cannot Satisfy
          Their Burden to Show That Dr. Smith Prescribed Testim in Reliance on
          Any Alleged Misrepresentation by Auxilium ...................................................... 14

     C.    The Court Should Grant Summary Judgment on Plaintiffs' Design Defect
          Claim Because Plaintiffs Cannot Satisfy Their Burden to Show a Feasible
          Alternative Design ............................................................................................... 17

D.    The Court Should Grant Summary Judgment on Mrs. Owens's Loss of Consortium Claim Because She Cannot Satisfy Her Burden to Show That Her Relationship with Her Husband Changed After His Second DVT ............... 18

CONCLUSION ......................................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Cooper Indus., Inc.*,
No. 03-476-JBC, 2012 WL 2339741 (E.D. Ky. June 19, 2012)....................................1, 12, 13

*Averhart v. Ortho-McNeil Pharm., Inc.*,
No. 3:09 OE 40028, 2014 WL 1224542 (N.D. Ohio Mar. 24, 2014)......................................9

*Bosch v. Bayer Healthcare Pharm., Inc.*,
13 F. Supp. 3d 730 (W.D. Ky. 2014) .................................................................................17

*Burgett v. Troy-Bilt LLC*,
970 F. Supp. 2d 676 (E.D. Ky. 2013) ................................................................................18

*Burton v. CSX Transp., Inc.*,
269 S.W.3d 1 (Ky. 2008) ...................................................................................................12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..............................................................................................................7

*Clark v. Danek Med., Inc.*,
64 F. Supp. 2d 652 (W.D. Ky. 1999) .................................................................................14

*Compex Int'l Co. v. Taylor*,
209 S.W.3d 462 (Ky. 2006) ..........................................................................................2, 13

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)......................................................................................................2, 13

*Ebel v. Eli Lilly & Co.*,
536 F. Supp. 2d 767 (S.D. Tex. 2008) .................................................................................8

*Foister v. Purdue Pharma, L.P.*,
295 F. Supp. 2d 693 (E.D. Ky. 2003) .............................................................................9, 12

*Ford v. Gen. Motors Corp.*,
305 F.3d 545 (6th Cir. 2002) .......................................................................................18, 19

*Gibson v. Sanofi-Aventis U.S., LLC*,
No. 3:07CV-192-S, 2009 WL 3490454 (W.D. Ky. Oct. 27, 2009)........................................10

*Godbey v. Univ. Hosp. of Albert B. Chandler Med. Ctr., Inc.*,
975 S.W.2d 104 (Ky. Ct. App. 1998) .................................................................................18

*Holbrook v. Rose*,
  458 S.W.2d 155 (Ky. 1970) ........................................................................................8

*Hurt v. Coyne Cylinder Co.*,
  956 F.2d 1319 (6th Cir. 1992) ...................................................................................10

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,
  No. 14 C 1748, 2017 WL 1836435 (N.D. Ill. May 8, 2017) .............................................7, 17

*Larkin v. Pfizer, Inc.*,
  153 S.W.3d 758 (Ky. 2004) ......................................................................................8, 9

*Martin v. Bayer Healthcare Pharm., Inc.*,
  No. 3:14-CV-398-TBR, 2015 WL 5031974 (W.D. Ky. Aug. 25, 2015) ..................................13

*Miller v. Ortho-McNeil Pharm., Inc.*,
  No. 3:11 OE 40008, 2013 WL 5939774 (N.D. Ohio Nov. 5, 2013)......................................11

*Prather v. Abbott Labs.*,
  960 F. Supp. 2d 700 (W.D. Ky. 2013) ............................................................... *passim*

*SMA Portfolio Owner, LLC v. Corporex Realty & Inv., LLC*,
  112 F. Supp. 3d 555 (E.D. Ky. 2015) ...........................................................................16

*Stewart v. Gen. Motors Corp.*,
  102 Fed. App'x 961 (6th Cir. 2004) ..............................................................................8

*Toyota Motor Corp. v. Gregory*,
  136 S.W.3d 35 (Ky. 2004) ........................................................................................17

*Wade v. Diamant Boart, Inc.*,
  179 Fed. App'x 352 (6th Cir. 2006) .............................................................................10

*West v. Huxol*,
  135 F. Supp. 3d 590 (W.D. Ky. 2015) ...........................................................................18

*Williams v. Fulmer*,
  695 S.W.2d 411 (Ky. 1985) ......................................................................................13

*Wilson v. Sentry Ins.*,
  993 F. Supp. 2d 662 (E.D. Ky. 2014) ............................................................................9

*Yonts v. Easton Tech. Prods., Inc.*,
  No. 3:11-CV-535-DJH, 2015 WL 3408937 (W.D. Ky. May 27, 2015)....................................8

**Statutes**

Ky. Rev. Stat. Ann. § 355.2-318...................................................................................13

Ky. Rev. Stat. Ann. § 411.145(1) ................................................................................................18

Ky. Rev. Stat. Ann. § 411.300, *et seq.* .........................................................................................7

**Rules**

Fed. R. Evid. 702 ...................................................................................................................2, 13

Fed. R. Civ. P. 56(c) ..................................................................................................................7

## PRELIMINARY STATEMENT

Plaintiff Isaac A. Owens was diagnosed with ███████ in July 2011 by his urologist, who prescribed Testim to treat Mr. Owens.  Mr. Owens used Testim sporadically through July 2013 when he was diagnosed with deep vein thrombosis ("DVT") in his left leg.  Mr. Owens seeks to recover for amounts paid to treat his DVT, which Plaintiffs claim was caused by his Testim use, and his wife, Plaintiff Mary Owens, seeks to recover for loss of consortium.  The Court should grant summary judgment because Plaintiffs cannot satisfy their burden to establish legal causation, which is an element of each of their product liability claims regardless of the theory (strict liability, negligence or breach of warranty) under which those claims are advanced.

Plaintiffs cannot establish that Defendant Auxilium Pharmaceuticals, LLC (f/k/a Auxilium Pharmaceuticals, Inc.) ("Auxilium") inadequately warned Mr. Owens's urologist about the risk that patients, like Mr. Owens, using Testim could develop blood clots in their legs because the labeling in effect at the time of Mr. Owens's prescriptions warned precisely that "**TESTIM can cause serious side effects including: . . . Blood clots in the legs**."  Ex. 1 at 26–27 (emphasis in original).  Mr. Owens's prescribing doctor did not read the Testim labeling, but nevertheless knew that Testim was associated with a possible risk of blood clots before he prescribed Testim to Mr. Owens.  For those reasons, Plaintiffs cannot establish that Mr. Owens's urologist would have made a different prescribing decision if he had been given a different warning, which Plaintiffs are required to prove under Kentucky's learned intermediary doctrine. *See Prather v. Abbott Labs.*, 960 F. Supp. 2d 700, 715 (W.D. Ky. 2013).

Plaintiffs also cannot establish that Testim can and did cause Mr. Owens's DVT, proof of which "require scientific assessments that must be established through expert testimony." *Adams v. Cooper Indus., Inc.*, No. 03-476-JBC, 2012 WL 2339741, at *1 (E.D. Ky. June 19,

2012). Among other things, at most, Mr. Owens had been using Testim  for four days before his DVT was diagnosed, As demonstrated in the contemporaneously filed motion to exclude testimony of Plaintiffs' experts, Plaintiffs have not offered expert testimony on the issues of general and specific medical causation that satisfies the requirements for admissibility under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

In addition to Plaintiffs' inability to satisfy their burden to show legal causation and medical causation, the Court should grant summary judgment on each of Plaintiffs' claims for the following independent reasons:

- Plaintiffs' breach of warranty claims fail as a matter of law because Plaintiffs lack privity with Auxilium, which "remains a prerequisite for products liability claims based on warranty. . . ." *Compex Int'l Co. v. Taylor*, 209 S.W.3d 462, 464 (Ky. 2006).

- Plaintiffs cannot establish that either Dr. Smith or Mr. Owens relied on any alleged misrepresentation of Auxilium, which is an essential element of their fraud and negligent misrepresentation claims.

- Plaintiffs have not even alleged, much less offered proof, that there is a feasible alternative design for Testim that would have prevented Mr. Owens's injury, which is an essential element of their design defect claims.

- Plaintiffs' testimony that their relationship did not change because of Mr. Owens's ▇ DVT precludes Mrs. Owens's claim for loss of consortium.

For all those reasons, explained in greater detail below, the Court should grant summary judgment on each of Plaintiffs' claims.[1]

## STATEMENT OF UNDISPUTED FACTS

████████████████████████████████████████████████████

Owens First Amended Plaintiff Fact Sheet ("Ex. 2") at 3. Prior and leading up to that time, Mr. Owens was being treated by his primary care physician, Dr. Martin Ozor, ████████

████████████████████████████████████████████████████

██████ I. Owens Dep. ("Ex. 3") at 151:6–152:9, 155:3–9; Ozor Dep. ("Ex. 4") at 18:3–12, 26:11–22, 34:7–18; Thompson Dep. ("Ex. 5") at 31:17–22. ███████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████ Ex. 2 at 9; Ex. 3 at 92:16–93:12, 116:2–4; Ex. 4 at 24:4–23, 67:11–14; Ex. 5 at 29:6–24. ███████████████████

████████████████████████████████████████████████████

Ex. 3 at 49:22–50:3; Ex. 5 at 47:2–51:6. █████████████████

████████████████████████████████████████████████████

██████████████████ *See* Ex. 6 at 76–77.

### A.    Mr. Owens's Hypogonadism Diagnosis

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████ D. Smith Dep. ("Ex. 7") at 24:3–22. ███████████████

████████████████████████████████████████████████████

---

[1] In addition, the Court should grant summary judgment because Plaintiffs' claims are preempted by federal law as explained in Defendants' contemporaneously filed motion for summary judgment on the ground of preemption.

 Ex. 8 at 109; Ex. 3 at 157:5– 158:21; Ex. 7 at 31:13–24. ████████████████████████████████ Dr. Smith diagnosed Mr. Owens with ███████████ and prescribed Testim to treat it.  Ex. 3 at 158:2–159:11, 183:15–22, 186:5–24; Ex. 7 at 33:17–34:6.

At all times when Dr. Smith prescribed Testim to Mr. Owens, the Medication Guide included with the labeling for medical providers and also provided to patients warned that "**TESTIM can cause serious side effects including: . . . Blood clots in the legs.**  This can include pain, swelling or redness of your legs."  Ex. 1 at 26–27 (emphasis in original).  Although Dr. Smith did not read the Testim labeling, when he prescribed Testim for Mr. Owens he nevertheless was aware that Testim treatment was associated with a potential risk of blood clots in the legs.  Ex. 7 at 54:16–55:14, 57:14–58:2.  In Dr. Smith's medical judgment, Testim was an appropriate treatment for Mr. Owens's ███████████ because the potential benefits outweighed the potential risks, including the risk of blood clots in the legs.  *Id.* at 61:22–62:6, 75:13–17.[2]

**B.     Mr. Owens's Testim Use**

Mr. Owens used Testim sporadically between July 2011 and July 2013.  Ex. 3 at 202:20–203:9.  After Mr. Owens filled his first prescription on July 26, 2011, he filled only three more prescriptions—on December 26, 2011, May, 25, 2012 and July 8, 2013—for a 30-day supply of Testim.  *See* Ex. 9 at 374, 383, 386–387.  Mr. Owens "saw no reason to" read the Medication Guide that was provided to him with Testim.  Ex. 3 at 195:10–196:2, 197:8–21; Ex. 2 at 15–16.

---

[2] ████████████████████████████████████████████ ████████████████████ Ex. 7 at 38:15–39:1.



▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 3 at 219:21–220:11, 280:8–281:1.

Mr. Owens also did not follow the instructions in the Medication Guide for applying

Testim. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓ Ex. 1 at 25 (emphasis in original); Ex. 3 at 191:21–192:14, 200:2–16; Ex. 7 at

39:18–40:2. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 1 at 26; Ex. 7 at 40:3–12. ▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 3 at 192:18–21, 198:17–24, 199:19–22, 203:10–16.

**C.    Mr. Owens's** ▓▓▓▓ **DVT**

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓ Ex. 8 at 71. ▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓ *Id.* Dr. Smith gave Mr. Owens a prescription for Testim, which he

filled on July 8. *Id.*; Ex. 9 at 374. ▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 3 at 233:15–234:20, 247:20–

248:22.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

*Id.*at 221:14–21, 236:11–238:1, 290:15–291:4; M. Owens Dep. ("Ex. 11") at 104:9–105:15; Ex.

10 at 195.[3] ████████████████████████████████████████████

██████████████████████████████ where an ultrasound revealed that Mr. Owens had

blood clots in his left leg.  Ex. 3 at 224:16–225:4.  ████████████████████████

████████████████████████████ *Id.* at 225:5–13; Ex. 4 at 77:1–3.[4]

    After his release, Mr. Owens returned to his then routine activities.  Ex. 3 at 135:8–16.

███████████████████████████████████████████████████████

███████████████████████ *Id.* at 262:3–5, 263:15–18.  █████████████████████

██████████████████████ *Id.* at 37:15–38:5, 39:13–17, 263:12–14.

████████████████████████████████████████████

████████████████████████████████████████████████ Ex. 8 at

69. ██████████████████████████████████████████████

████████████████████████████████ Ex. 3 at 172:21–176:3, 260:19–

261:10; Ex. 12. ███████████████████████

██████████████████████████████████████ *See* Ex. 3 at 175:24–14, 260:16–18;

Ex. 7 at 51:23–52:9.

---

[3] ████████████████████████████████████████████████
████████████████████████████████████████████ Ex. 10 at 89.  Mr.
Owens' testimony on the issue was inconsistent.  *Compare* Ex. 3 at 218:7–12 ████
███████████████████████████████████████████████████ *with id.* at
290:15–291:7 ███████████
██████████████████.  For purposes of this motion, the precise time when Mr. Owens first
experienced pain in his left leg is immaterial.

[4] █████████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████ Ex. 4 at 78:21–79:20, 80:12–81:16.

## STANDARD OF REVIEW

As this Court has explained, summary judgment is appropriate when, construing the facts in the light most favorable to the non-moving party, "there is no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law." *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, No. 14 C 1748, 2017 WL 1836435, at *7 (N.D. Ill. May 8, 2017) (citation omitted); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 2017 WL 1836435, at *7.

## ARGUMENT

Plaintiffs allege that Mr. Owens's Testim use caused his ███ DVT in July 2013. Plaintiffs assert claims for strict products liability—failure to warn, negligence, breach of implied warranty, breach of express warranty, fraud, negligent misrepresentation, design defect, and loss of consortium, and seek compensatory and punitive damages. Compl., ECF No. 1. Summary judgment is appropriate because Plaintiffs cannot establish essential elements of each of their claims and, therefore, no reasonable jury could return a verdict for them.

## I. PLAINTIFFS CANNOT SATISFY THEIR BURDEN TO PROVE LEGAL CAUSATION, WHICH IS AN ESSENTIAL ELEMENT OF EACH OF THEIR CLAIMS

Plaintiffs' claims are governed by the Kentucky Product Liability Act. *See Prather v. Abbott Labs.*, 960 F. Supp. 2d 700, 705 (W.D. Ky. 2013) (citing Ky. Rev. Stat. Ann. § 411.300, *et seq.*). Regardless of the theory advanced, "[t]o recover under any product liability claim, the

plaintiff must prove the existence of a 'defect' . . . and legal causation." *Id.* at 706 (citation omitted); *see also Holbrook v. Rose*, 458 S.W.2d 155, 157 (Ky. 1970) ("We need not discuss the various refinements and considerations concerning the application of these theories of [negligence, breach of warranty and strict liability], because all of them have one common denominator which is that causation must be established."). To establish legal causation, Plaintiffs must establish both warnings causation, *i.e.*, that Auxilium's alleged failure to adequately warn about the risk of blood clots caused Mr. Owens to use Testim, and medical causation, *i.e.*, that Testim caused Mr. Owens's ███ DVT. Plaintiffs cannot establish either.

### A.    Plaintiffs Cannot Satisfy Their Burden to Prove Warnings Causation

To succeed on claims arising from product warnings, a plaintiff generally must prove that the manufacturer's warnings about its product were inadequate and that the inadequate warning was the legal cause of the plaintiff's injury, *i.e.*, an adequate warning would have prevented the injury. *See Stewart v. Gen. Motors Corp.*, 102 Fed. App'x 961, 964 (6th Cir. 2004); *Yonts v. Easton Tech. Prods., Inc.*, No. 3:11-CV-535-DJH, 2015 WL 3408937, at *6 (W.D. Ky. May 27, 2015). In cases involving prescription medicines, Kentucky has adopted the learned intermediary doctrine under which "the obligation of a manufacturer to warn about the risks attendant to the use of drugs and medical devices that may be sold only pursuant to a health-care provider's prescription traditionally has required warnings directed to health-care providers and not to patients . . . ." *Larkin v. Pfizer, Inc.*, 153 S.W.3d 758, 762 (Ky. 2004).[5]  Consequently,

---

[5] The learned intermediary doctrine applies to each of Plaintiffs' claims for strict products liability—failure to warn, negligence, breach of warranty, and fraud and negligent misrepresentation—each of which is premised on Auxilium's alleged failure to adequately describe Testim's risks and efficacy. *See, e.g.*, *Ebel v. Eli Lilly & Co.*, 536 F. Supp. 2d 767, 773 (S.D. Tex. 2008) ("Where the crux of the suit is based on a failure to adequately warn, the learned intermediary doctrine may apply to strict liability, negligence, misrepresentation, and breach of warranty claims.").

"[p]roviding an adequate warning to the prescribing physician relieves the manufacturer of its duty to warn the patient regardless of how or if the physician warns the patient." *Id.* at 765. In light of the learned intermediary doctrine, Plaintiffs must establish that Auxilium failed to inform Dr. Smith about the potential risk of blood clots before he prescribed Testim to Mr. Owens, and that Dr. Smith would not have prescribed Testim for Mr. Owens if he had been given an adequate warning. Plaintiffs cannot satisfy either burden.

### 1. Plaintiffs Cannot Satisfy Their Burden to Show That Auxilium Failed to Adequately Warn Dr. Smith That Testim Use Carried a Risk of Blood Clots in the Legs

"'[A] warning must be fair and adequate, to the end that the user, by the exercise of reasonable care on his own part, shall have a fair and adequate notice of the possible consequences of use or even misuse.'" *Wilson v. Sentry Ins.*, 993 F. Supp. 2d 662, 668 (E.D. Ky. 2014) (internal quotation marks omitted). A warning is adequate as a matter of law where it discloses the precise risk that allegedly caused the plaintiff's injury. *See id.* at 669 (summary judgment granted where plaintiff "was injured while doing exactly what the caution sticker . . . informed her not to do"); *Foister v. Purdue Pharma, L.P.*, 295 F. Supp. 2d 693, 707–08 (E.D. Ky. 2003) (summary judgment granted for pharmaceutical manufacturer where package insert warned that taking broken or crushed medicine could lead to addiction or death—the injuries allegedly caused by the medicine); *see also Averhart v. Ortho-McNeil Pharm., Inc.*, No. 3:09 OE 40028, 2014 WL 1224542, at *4 (N.D. Ohio Mar. 24, 2014) ("courts can find as a matter of law that a warning was adequate if it specifically warns against the ultimate adverse effect" (applying Mississippi law)).

At all times while Mr. Owens was prescribed Testim, the Medication Guide, included with the labeling for doctors and provided to patients like Mr. Owens, provided: "**TESTIM can cause serious side effects including: . . . Blood clots in the legs.** This can include pain,

swelling or redness of your legs."  Ex. 1 at 26–27 (emphasis in original).  In July 2013, Mr. Owens was diagnosed with blood clots in his left leg after experiencing pain in it.  Auxilium's warning was adequate as a matter of law because it gave doctors (and patients) fair and adequate notice that Testim use could result in blood clots in the legs, which is the precise risk that befell Mr. Owens.

> ### 2. Plaintiffs Cannot Satisfy Their Burden to Show That Dr. Smith Would Have Changed His Prescribing Decision If He Had Been Provided a Different Warning

Even if, contrary to law and fact, Auxilium's warning had been inadequate, the Court should grant summary judgment because Plaintiffs cannot establish the essential element that an allegedly inadequate warning was the legal cause of Dr. Smith's decision to prescribe Testim for Mr. Owens.  Plaintiffs cannot establish warnings causation where, as here, "the record strongly suggests that Defendant's conduct did not have a meaningful effect on any of [the prescribing doctor's] medical decisions."  *Prather v. Abbott Labs.*, 960 F. Supp. 2d 700, 716 (W.D. Ky. 2013) (granting summary judgment for pharmaceutical manufacturer); *Gibson v. Sanofi-Aventis U.S., LLC*, No. 3:07CV-192-S, 2009 WL 3490454, at \*4 (W.D. Ky. Oct. 27, 2009) (granting summary judgment for pharmaceutical manufacturer where plaintiff's prescribing physician testified "that she would have prescribed Ambien® for [the plaintiff] under either version of the Ambien® labeling").  That is so for two independent reasons.

First, where a prescriber does not read the manufacturer's warnings, that "necessarily preclude[s] [the plaintiff] from being able to establish that the alleged failure to adequately warn was the proximate cause of his injuries" because the prescriber "would not have been aware of any additional or more specific warnings even if they [had] been provided."  *Wade v. Diamant Boart, Inc.*, 179 Fed. App'x 352, 355–56 (6th Cir. 2006); *Hurt v. Coyne Cylinder Co.*, 956 F.2d 1319, 1329 (6th Cir. 1992) (reversing denial of motion for directed verdict where plaintiff "did

not even read the label that was provided," which precluded proof that an allegedly inadequate warning caused plaintiff's injury). Dr. Smith did not read the Testim labeling before he prescribed Testim to Mr. Owens. Ex. 7 at 54:16–55:14. Thus, there is no warning that Auxilium could have provided to Dr. Smith that would have changed his prescribing decision.

Second, where the prescribing doctor is independently aware of the risk that the manufacturer allegedly failed to disclose, a plaintiff cannot establish that a different warning would have changed the doctor's prescribing decision. *See Miller v. Ortho-McNeil Pharm., Inc.*, No. 3:11 OE 40008, 2013 WL 5939774, at *4 (N.D. Ohio Nov. 5, 2013) (granting summary judgment under Mississippi law, which like Kentucky applies the learned intermediary doctrine, where plaintiff's prescribing doctors testified that they knew a risk of blood clots was associated with hormone replacement therapy because plaintiff "has not shown that a different warning would have changed the prescribing decision").

Here, Dr. Smith was aware that Testim was associated with a potential risk of blood clots in the leg, and decided that Testim was an appropriate treatment for Mr. Owens despite that risk.

> Q.     The lead-in question is:  What are the possible side effects of Testim? And then at the top of this page, in your right hand, the last bullet point says, "Blood clots in the legs."
>         Were you aware at the time you prescribed Testim to Mr. Owens that blood clots in the legs was a potential side effect of Testim?
>
> A.     As a potential, yes.
>
> Q.     And despite having that knowledge, you determined that Testim was a good product for him ███████████████████████████████ ██████; is that fair?
>
> A.     Yes.

. . .

> Q.      After assessing all of the risks and information that you had available to you regarding Testim, you made the medical determination that the benefits outweighed the risks and prescribed Testim to Mr. Owens, correct?
>
> A.      Yes.
>
> Q.      And is that a decision that you stand by today?
>
> A.      With my knowledge of his case, yes.

Ex. 7 at 57:14–58:2, 61:22–62:6.[6]  Indeed, Dr. Smith continues to prescribe Testim to patients today.  *Id.* at 16:4–6.  And he is not prescribing testosterone replacement therapies less frequently due to anything he has learned after Mr. Owens's Testim use regarding possible side effects associated with Testim.  *Id.* at 67:1–12.

Accordingly, the Court should grant summary judgment because Plaintiffs have not satisfied their burden to produce evidence that a different warning would have changed Dr. Smith's prescribing decision.

**B.      Plaintiffs Cannot Satisfy Their Burden to Establish That Testim Caused Mr. Owens's ▇▇▇ DVT**

To establish that Testim caused his ▇▇▇ DVT, Plaintiffs must prove both general causation (*i.e.*, that Testim can cause DVT) and specific causation (*i.e.*, that Testim, in fact, was a substantial factor in causing Mr. Owens's DVT).  *See Adams v. Cooper Indus., Inc.*, No. 03-476-JBC, 2012 WL 2339741, at *1 (E.D. Ky. June 19, 2012); *Burton v. CSX Transp., Inc.*, 269 S.W.3d 1, 7–8 & n.19 (Ky. 2008); *see also Foister v. Purdue Pharma, L.P.*, 295 F. Supp. 2d 693, 702 (E.D. Ky. 2003) ("Kentucky has adopted the 'substantial factor test' in evaluating legal

---

[6] Mr. Owens testified that Dr. Smith "must have been told" about the risk of blood clots in "some way" because he knew Testim "could cause" blood clots when Mr. Owens asked him about it after his ▇▇▇ DVT diagnosis.  Ex. 3 at 282:4–11.

causation.").  Proof of both general and specific causation "require scientific assessments that must be established through expert testimony."  *Adams*, 2012 WL 2339741, at *1.

As explained in Defendants' contemporaneously filed motion to exclude Plaintiffs' expert testimony, the testimony of Plaintiffs' expert, Dr. Jihad Abbas, that Testim can cause DVT and that Mr. Owens's treatment with Testim did cause his ███ DVT should be excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  Absent Dr. Abbas's testimony, Plaintiffs cannot establish the essential element of all of their claims that Testim was the legal cause of Mr. Owens's ███ DVT.  Accordingly, the Court should grant summary judgment on each of Plaintiffs' claims.

## II.    THE COURT SHOULD GRANT SUMMARY JUDGMENT ON EACH OF PLAINTIFFS' CLAIMS FOR ADDITIONAL REASONS

Even if Plaintiffs could raise a genuine issue of material fact as to legal causation, the Court should grant summary judgment on each of Plaintiffs' claims for the reasons described below.

### A.    The Court Should Grant Summary Judgment on Plaintiffs' Breach of Warranty Claims Because Plaintiffs Lack Privity with Auxilium

Under Kentucky law, "privity remains a prerequisite for products liability claims based on warranty. . . ."  *Compex Int'l Co. v. Taylor*, 209 S.W.3d 462, 464 (Ky. 2006); *accord Martin v. Bayer Healthcare Pharm., Inc.*, No. 3:14-CV-398-TBR, 2015 WL 5031974, at *3 (W.D. Ky. Aug. 25, 2015) ("[plaintiff's] claim for breach of implied warranty fails as a matter of law, as no privity of contract existed between the parties").  Kentucky law permits a buyer not in privity with the seller to recover for breach of warranty only to the extent a provision of the U.C.C. provides for that.  *Compex Int'l Co.*, 209 S.W.3d at 464 (quoting *Williams v. Fulmer*, 695 S.W.2d 411, 413 (Ky. 1985)).  The only provision of the U.C.C. that so provides is Ky. Rev. Stat. Ann. § 355.2-318:

A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

Mr. Owens did not purchase Testim from Auxilium. He purchased Testim from Rite Aid, a retail pharmacy. Ex. 9 at 374, 383, 386–387. Nor did Mr. Owens consume Testim that anyone in his family or household purchased from Auxilium. Thus, Mr. Owens is neither in privity with Auxilium nor is he a family member of someone who is in privity with Auxilium. The Court should grant summary judgment because Plaintiffs cannot recover on their breach of warranty claims under Kentucky law.

**B.      The Court Should Grant Summary Judgment on Plaintiffs' Fraud and Negligent Misrepresentation Claims Because Plaintiffs Cannot Satisfy Their Burden to Show That Dr. Smith Prescribed Testim in Reliance on Any Alleged Misrepresentation by Auxilium**

To establish their fraud and negligent misrepresentation claims, Plaintiffs must prove that Dr. Smith relied on Auxilium's alleged misrepresentations concerning Testim, and Mr. Owens thereby suffered injury. *See Prather v. Abbott Labs.*, 960 F. Supp. 2d 700, 715–16 (W.D. Ky. 2013); *Clark v. Danek Med., Inc.*, 64 F. Supp. 2d 652, 656 (W.D. Ky. 1999). In *Prather*, the court granted summary judgment for a medical device manufacturer on fraud and negligent misrepresentations claims based on the implanting doctor's testimony that he "did not rely on any alleged representations made by" the manufacturer's sales representative. *Prather*, 960 F. Supp. 2d at 716. And in *Clark*, the court dismissed claims for fraud and negligent misrepresentation against a medical device manufacturer based on alleged fraudulent statements to the FDA because "Plaintiffs have made no allegations of their belief in and reliance upon [manufacturer's] representations to the FDA," and their doctor "was not influenced by the alleged fraud." *Clark*, 64 F. Supp. 2d at 657.

Based on the undisputed facts here, Plaintiffs cannot satisfy their burden to show that Dr. Smith relied on any alleged misrepresentation made by Auxilium. Although Plaintiffs allege that Auxilium engaged in "a 'disease awareness' marketing campaign" and misrepresented the safety and efficacy profiles of Testim, Compl. ¶¶ 62–67, they have not offered any evidence that Dr. Smith relied on any such misrepresentations in prescribing Testim. Dr. Smith testified that, in prescribing Testim, he relied primarily on published literature, which he did not specifically identify. Ex. 7 at 65:1–11. He further testified that he did not recall any instances where an Auxilium sales representative gave him false information about Testim or urged him to prescribe Testim for an off-label indication. *Id.* at 53:14–21. And Dr. Smith testified in response to questions from Plaintiffs' counsel that he did not recall Auxilium sales representatives using sales tactics intended to encourage him to "look[] for patients for testosterone replacement":

> Q. When a representative from Auxilium would come in detailing or promoting Testim, what would he or she talk to you about, just generally?
>
> A. They would generally discuss: Are you using it? Has it been effective for you?
>
> Q. Would they encourage you to test the blood testosterone levels of patients in certain categories?
>
> A. Do you mean looking for patients for testosterone replacement?
>
> Q. Well, right. Yes, essentially.
> Do you remember Auxilium representatives encouraging you to test men for low testosterone if they had comorbidities of, say, diabetes? Opioid use?
>
> A. I do not recall them encouraging that.
>
> Q. Okay. Do you recall them encouraging you to test every man over 45?
>
> A. I do not recall that.

*Id.* at 68:2–20.

Even if Mr. Owens's reliance were at issue (which it is not), that would not save his fraud and negligent misrepresentation claims. Mr. Owens did not see any Testim advertisements. Ex. 3 at 283:13–17. Although Mr. Owens claims to have seen unspecified advertisements for TRT and relating to low testosterone or hypogonadism, he does "not recall seeing ads prior to star[t]ing TRT." Ex. 2 at 16–17. Consistent with that representation, he did not solicit TRT from Dr. Smith. ████████████████████████████████████████████ ████████████████████████████████████ *Id.* at 15.[7] Thus, in filling his Testim prescriptions, Mr. Owens did not rely on anything that Auxilium said.

Even if, contrary to fact, Mr. Owens had relied on something Auxilium said, that reliance would not have been reasonable as required under Kentucky law. *See SMA Portfolio Owner, LLC v. Corporex Realty & Inv., LLC*, 112 F. Supp. 3d 555, 569 (E.D. Ky. 2015) ("When a party alleges that it relied on a fraudulent statement, that reliance must be 'reasonable . . . or "justifiable."'" (citation omitted)). Although he chose not to read it, Mr. Owens concedes that the warning that Auxilium provided to him was "[m]ost definitely" sufficient to inform him that Testim treatment carried a risk of blood clots in his legs:

> Q.     Do you understand the information here, that it's warning about the risk of blood clots while using Testim?
>
> A.     Yes.
>
> Q.     So if you had read this at the time you were taking Testim, you would have understood that Testim carried a risk of blood clots in the leg?
>
> A.     Most definitely.

---

[7] ████████████████████████████████████████████████████
████████████████████████ *See* Ex. 3 at 160:2–161:1; Ex. 9 at 373, 389– 390, 393, 398, 409.
████████████████████████████████████████████████████████
████████████████████████████████████████
████████████████████ *Id.* at 183:23–184:15.

> Q.    Okay.  So reading this today, you understand that warning?
>
> A.    Yes.
>
> Q.    Is there anything about it you don't understand?
>
> A.    No, nothing that I don't understand about it.

Ex. 3 at 219:21–220:11.  Having failed to read the warning that Auxilium provided with Testim, which would have notified Mr. Owens of the risk he claims resulted from his Testim use, any alleged reliance on something else that Auxilium said would have been unreasonable.

### C.    The Court Should Grant Summary Judgment on Plaintiffs' Design Defect Claim Because Plaintiffs Cannot Satisfy Their Burden to Show a Feasible Alternative Design

Under Kentucky law, "design defect liability requires proof of a feasible alternative design." *Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 42 (Ky. 2004); *see also Bosch v. Bayer Healthcare Pharm., Inc.*, 13 F. Supp. 3d 730, 742–43 (W.D. Ky. 2014) (dismissing design defect claims).  Plaintiffs have not offered any such proof.  Plaintiffs have not even alleged a feasible alternative design for Testim.  Instead, Plaintiffs allege that "[i]n spite of gaining approval to market Testim to treat hypogonadism, Defendant manufactured, sold, and promoted Testim to treat a non-existent medical condition that it called 'Low T,' which was a name it created for the constellation of symptoms experienced by men because of the normal aging process."  Compl. ¶ 134.

As the Court held in granting summary judgment on certain design defect claims asserted in the AbbVie bellwether cases, Plaintiffs' design defect claims "are actually just a repackaging of their off-label marketing claims—that [Defendants] never should have promoted [Testim] for use by individuals with age-related hypogonadism or 'Low T.'"  *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, Case No. 14 C 1748, 2017 WL 1836435, at *20 (N.D. Ill. May 8,

2017). Here too, the Court should grant summary judgment on Plaintiffs' design defect claims because they have failed to offer any evidence of a feasible alternative design.

> **D.** **The Court Should Grant Summary Judgment on Mrs. Owens's Loss of Consortium Claim Because She Cannot Satisfy Her Burden to Show That Her Relationship with Her Husband Changed After His Second DVT**

The Court should grant summary judgment on Mrs. Owens's loss of consortium claim for two independent reasons.

First, "[u]nder Kentucky law, loss of consortium is a separate cause of action, but it is 'derivative' of the underlying claim." *Burgett v. Troy-Bilt LLC*, 970 F. Supp. 2d 676, 685 (E.D. Ky. 2013) (citation omitted); *accord West v. Huxol*, 135 F. Supp. 3d 590, 600 (W.D. Ky. 2015) ("A loss of consortium claim 'is derivative in nature, arising out of and dependent upon the right of the injured spouse to recover.'" (citations omitted)); *Godbey v. Univ. Hosp. of Albert B. Chandler Med. Ctr., Inc.*, 975 S.W.2d 104, 106 (Ky. Ct. App. 1998) ("As far as the claim of Mrs. Godbey to damages for loss of consortium, if no causation is established for the injuries which she alleges caused her loss, no recovery can be had. Her cause of action is derivative of her husband's."). The Court should grant summary judgment on Mrs. Owens's loss of consortium claim because, as demonstrated above, the Court should grant summary judgment on each of Plaintiffs' primary claims.

Second, even if, contrary to law and undisputed fact, the Court determines that any of Plaintiffs' primary claims withstand summary judgment, it should grant summary judgment on Mrs. Owens's loss of consortium claim. Kentucky law defines "consortium" as "the right to the services, assistance, aid, society, companionship and conjugal relationship between husband and wife, or wife and husband." Ky. Rev. Stat. Ann. § 411.145(1). A plaintiff cannot succeed where the evidence shows that a spouse "has suffered no loss of consortium." *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 556 (6th Cir. 2002). In *Ford*, the Sixth Circuit affirmed summary judgment

where the plaintiff testified that "the basic aspects of their married life did not change as a result of Defendant's conduct." *Id.*

Here, as in *Ford*, Mrs. Owens's testimony defeats her loss of consortium claim. [redacted] Ex. 11 at 79:7–22. [redacted]. *Id.* at 111:14–112:20. [redacted]

> [redacted]?
>
> [redacted]
>
> [redacted]
>
> [redacted]
>
> . . .
>
> [redacted]
>
> [redacted]
>
> [redacted]

*Id.* at 114:5–12, 119:9–19. [redacted] Ex. 3 at 277:11–14.

Accordingly, the undisputed facts establish that Mrs. Owens's relationship with her husband has not changed since his second DVT. The Court should grant summary judgment on Mrs. Owens's loss of consortium claim for that reason.

## CONCLUSION

For the foregoing reasons, the Court should grant Auxilium's motion for summary

judgment.

Dated: September 11, 2017    Respectfully submitted,

          */s/ Andrew K. Solow*
          Andrew K. Solow (*pro hac vice*)
          **ARNOLD & PORTER KAYE SCHOLER LLP**
          25O West 55th Street
          New York, NY 10019-9710
          Phone:  (212) 836-7740
          Fax:  (212) 836-6776
          Email:  andrew.solow@apks.com

          Pamela J. Yates (*pro hac vice*)
          **ARNOLD & PORTER KAYE SCHOLER LLP**
          777 South Figueroa Street, 44th Floor
          Los Angeles, CA 90017-5844
          Phone:  (213) 243-4178
          Fax:  (213) 243-4199
          Email:  pamela.yates@apks.com

          ***Attorneys for Auxilium Pharmaceuticals, LLC***
          ***(f/k/a Auxilium Pharmaceuticals, Inc.)***

**CERTIFICATE OF SERVICE**

I, Andrew K. Solow, certify that on September 11, 2017, I served a true and correct copy of the foregoing Defendant's Motion and Memorandum of Law in Support of its Motion for Summary Judgment on State Law Grounds on counsel of record by electronic notice through the CM/ECF system of the United States District Court for the Northern District of Illinois.

Dated: September 11, 2017
/s/ Andrew K. Solow
Andrew K. Solow, (*pro hac vice*)